**United States District Court**
**District of Massachusetts**

|  |  |  |
|---|---|---|
| SPRUCE ENVIRONMENTAL TECHNOLOGIES, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 15-11521-NMG |
| FESTA RADON TECHNOLOGIES, CO., | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM & ORDER

**GORTON, J.**

This case arises from an advertising campaign by defendant Festa Radon Technologies, Co. ("Festa") which plaintiff Spruce Environmental Technologies, Inc. ("Spruce") alleges contains literally false and misleading statements about Spruce's products. Spruce and Festa are direct competitors in the radon mitigation industry, a market that provides products for testing and reducing indoor levels of the colorless and odorless radioactive gas radon.

Pending before the Court is plaintiff's motion for a preliminary injunction to enjoin Festa from continuing its "Dare to Compare" advertising campaign and to publish corrective advertising. For the reasons that follow, the motion will be allowed, in part, and denied, in part.

## I. Background

### A. Parties

Spruce is a Massachusetts corporation in the business of manufacturing and selling radon mitigation devices including a line of radon mitigation fans under the trade name RadonAway®.

Festa is a Pennsylvania corporation also in the business of manufacturing and supplying radon mitigation devices. It entered the radon mitigation fan market in 1999 when that portion of the industry was dominated by Spruce and one other company. Festa's line of radon mitigation fans are marketed and sold under the name AMG.

### B. The Subject Advertising

In or about February, 2015, Festa began marketing its products through a catalog containing a comparison of radon mitigation fans by Festa and Spruce. That section, which spans several pages, is titled "*Dare to Compare* US versus THEM" and provides photographs and statements juxtaposing the two lines of products. For example, Festa compares a "7 year old AMG Fan vs. [a] 5 year old fan from our competitor" and provides a photograph of a gray Festa fan next to a bright yellow Spruce fan.

The next few pages list a series of differences between the products along with side-by-side photographs of the products accompanying those claims. The comparisons are as follows:

US (referring to Festa) versus THEM (referring to Spruce)

| | |
|---|---|
| 1) "Secure Lock Lever Nuts" | "Inexpensive Wirenuts" |
| 2) "Solid lid with four screws to ensure a watertight fit. Comes with 2 extra in case you drop one" | "Molded Plastic lid secured with only two screws" |
| 3) "Factory Sealed Motor Wire" | "Motor wire caulked to seal" |
| 4) "Solid motor lead wires" | "Stranded motor lead wires" |
| 5) "Factory Stamped, Dated, & Serialized" | "Generic-No Manufacture Info" |
| 6) "Terminal Box With (4) Screw Holes With Brass Inserts To Prevent Stripping" | "Terminal Box With (2) Screw Holes. Screw Directly Into Plastic" |
| 7) "Motor Mounted With (4) Mounting Screws. Allows For Better Stability And Quiet, Vibration Free Operation" | "Motor Mounted With only (2) screws" |
| 8) "Capacitor With Factory Installed Lead Wires For Direct Connect" | "Capacitor Requires Wires Installed during assembly" |
| 9) "Watertight Pivoting Grommet" | "Plastic Sleeve Requiring Caulking" |

The content of Festa's direct comparison is also depicted on the company's website and several of the images in Festa's catalog portray products bearing labels indicating that they are both Home Ventilating Institute ("HVI") and Energy Star certified.

## C.   Procedural History

Plaintiff filed the instant lawsuit and motion for preliminary injunction in April, 2015.  The complaint asserts

claims for 1) violation of the Lanham Act, 15 U.S.C. § 1125(a),

2) violation of M.G.L. c. 93A, 3) violation of M.G.L. c. 266, §

91 and 4) commercial disparagement.

Defendant filed an amended answer and counterclaims for 1)

violation of the Lanham Act, 15 U.S.C. § 1125(a), 2) violation

of M.G.L. c. 93A and 3) commercial disparagement and responded

to the pending motion in June, 2015.  A hearing was held shortly

thereafter.

## II.  Plaintiff's Motion for a Preliminary Injunction

### A.  Legal Standard

In order to obtain a preliminary injunction, the moving

party must establish

> (1) a substantial likelihood of success on the merits,
> (2) a significant risk of irreparable harm if the
> injunction is withheld, (3) a favorable balance of
> hardships and (4) a fit (or lack of friction) between
> the injunction and the public interest.

Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003)

(citation omitted).  Out of these factors, the likelihood of

success on the merits "normally weighs heaviest on the

decisional scales." Coquico, Inc. v. Rodriguez-Miranda, 562 F.3d

62, 66 (1st Cir. 2009).

The Court may accept as true "well-pleaded allegations [in

the complaint] and uncontroverted affidavits." Rohm & Haas Elec.

Materials, LLC v. Elec. Circuits, 759 F. Supp. 2d 110, 114, n.2

(D. Mass. 2010) (quoting Elrod v. Burns, 427 U.S. 347, 350, n.1

(1976).  The Court may also rely on otherwise inadmissible

evidence, including hearsay, in deciding a motion for

preliminary injunction. See Asseo v. Pan American Grain Co.,

Inc., 805 F.2d 23, 26 (1st Cir. 1986).

**B.   Application**

**1.    Likelihood of Success**

To prevail on its Lanham Act claim based on false

advertising, 15 U.S.C. § 1125(a)(1)(B), plaintiff must prove

that

> (1) the defendant made a false or misleading description
> of fact or representation of fact in a commercial
> advertisement about his own or another's product;
>
> (2) the misrepresentation is material, in that it is
> likely to influence the purchasing decision;
>
> (3) the misrepresentation actually deceives or has the
> tendency to deceive a substantial segment of its
> audience;
>
> (4) the defendant placed the false or misleading
> statement in interstate commerce; and
>
> (5) the plaintiff has been or is likely to be injured as
> a result of the misrepresentation, either by direct
> diversion of sales or by a lessening of goodwill
> associated with its products.

Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d

302, 310-11 (1st Cir. 2002).  Moreover, when an advertisement is

literally false, a plaintiff can succeed on a false advertising

claim without evidence of consumer deception. Id. at 311.  When

an advertisement is implicitly false (where a claim is true or

ambiguous but misleading), however, a plaintiff must demonstrate

consumer deception or provide evidence that the "defendant[]
intentionally deceived the consuming public." Id. at 311, n. 8.

Spruce contends that it is likely to succeed on the merits
of its claim under the Lanham Act because Festa's direct
comparative advertising contains literally false statements
including 1) depictions of Festa's products as HVI and Energy
Star certified when they are not, 2) claims that Festa fans have
solid motor lead wires even though, as do the Spruce fans, they
use stranded wires, 3) claims that the Spruce fan motors are
"Generic-No Manufacture Info" even though they do have a
manufacturer's label, 4) implications that the Spruce fan casing
will degrade and change into a yellow color after five years
even though plaintiff has samples of its own five-year-old
products that have not changed color and 5) implications that
the Spruce motor wires and capacitors are not factory sealed and
otherwise require some sealing during installation.  Plaintiff
avers that those literally false statements and the
representations are material because they are likely to
influence consumers' purchasing decisions.

Plaintiff further contends that even if the Court construes
Festa's statements as implicitly false, Spruce is entitled to
injunctive relief because defendant intentionally set out to
mislead the public through its comparative advertisement.

Defendant responds by addressing each of plaintiff's allegations. It maintains that the comparative advertising segment was published only after Spruce's sales representatives told customers that Festa's radon mitigation fans were "garbage" and "junk."

With respect to the issue of discoloration of plaintiff's fans, defendant has submitted additional photographs of RadonAway fans that have undergone pronounced yellowing after exposure to sunlight. At the motion hearing, defendant displayed the RadonAway fan that was photographed in Festa's catalog. Although the fan certainly was discolored, it was not the bright shade of yellow portrayed in the photograph.

Defendant admitted that plaintiff's fan was photographed with flash while defendant's fan was not, which may have resulted in the enhanced brightness of the Spruce fan. The Court concludes that plaintiff will therefore likely succeed on the merits of its false advertising claim based on some of the photographs in defendant's advertisement because they are misleading and present an inaccurate comparison.

As for the certifications, defendant acknowledges that there is currently a lapse in its Energy Star certification due to missing paperwork and that its fans have not been HVI certified since 2010. Festa notes that although it has already submitted the necessary paperwork and expects to be Energy Star

certified again shortly, it has removed references to Energy

Star from its website and is no longer placing Energy Star

stickers on its fans.  The Court concludes that, even though the

fans photographed in the catalog themselves were Energy Star

certified, defendant is falsely representing to consumers that

its fans are currently Energy Star compliant.  The same applies

to the older photographs of fans displaying an HVI sticker.

With respect to the description of the Spruce motor as

"Generic-No Manufacturer Info," defendant contends that the

product meets a dictionary definition of "generic" which defines

the term as "a product (such as a drug) that is not sold or made

under a particular brand name." GENERIC, MERRIAM-WEBSTER DICTIONARY

(2015), http://www.merriam-webster.com/dictionary/generic.

Defendant has submitted examples of the labels on plaintiff's

fan motors and maintains that the motors appear generic because

the labels lack the model number, product name, trademark and

manufacturer name.  It also contends that one of the motor

manufacturer's own sales representatives did not recognize the

motor because the product was not branded.

Although the motor was manufactured by another company and

specifically tailored to plaintiff's needs, the Court concludes

that the description is not literally false in the context of

the advertisement.  Moreover, to the extent that it is

misleading, the Court is not persuaded that plaintiff will prove that defendant intended to deceive through its description.

As for the motor wires, defendant contends that there is no question in the industry that Festa uses solid motor lead wires while Spruce uses stranded wires.  Because neither party has cited any authority on the issue, the Court declines to address the truth or falsity of that statement at this stage of the litigation.

Finally, the Court concludes that defendant's description of the Spruce motor wires and capacitors does not falsely represent to customers that they have to seal the fan's motor during installation.

Accordingly, the Court determines that plaintiff is likely to succeed on its false advertising claim based only on defendant's photographic comparison of the colors of the fans and its representations concerning the status of its Energy Star and HVI certifications.

### 2.  Irreparable harm

Irreparable harm is "a substantial injury that is not accurately measureable or adequately compensable by money damages." Ross-Simons of Warwick v. Baccarat, Inc., 102 F.3d 12, 19 (1st Cir. 1996).  A plaintiff alleging irreparable injury must show more than a "tenuous or overly speculative forecast of anticipated harm." Id.  Examples of irreparable injuries include

loss of incalculable revenue and harm to goodwill or reputation.
Id. at 19-20.  In the preliminary injunction context, the First
Circuit Court of Appeals measures irreparable harm

> on a sliding scale, working in conjunction with a moving
> party's likelihood of success on the merits, such that
> the strength of the showing necessary on irreparable
> harm depends in part on the degree of likelihood of
> success shown.

Braintree Labs., Inc. v. Citigroup Global Markets Inc., 622 F.3d
36, 42-43 (1st Cir. 2010) (citations omitted).

Plaintiff asserts that it will suffer irreparable harm if
the Court does not grant the preliminary injunction because
Spruce and Festa are direct competitors and the false and
misleading advertising will affect purchasing decisions of
consumers.

Spruce alleges that at least one customer has already been
affected by Festa's advertisements.  That customer emailed
plaintiff expressing concern over several aspects of RadonAway
fans, including the discoloration issue because it suggests that
"it is a cheap product casing."  Although plaintiff can be
compensated for the most part by money damages if it prevails on
the merits of its claims, the Court concludes that plaintiff has
demonstrated a modicum of irreparable harm to its goodwill and
reputation.

### 3. Remaining factors

Plaintiff contends that the balance of equities tips in its favor because any potential harm Festa endures from being required to discontinue its false advertising is entirely self-inflicted. The Court concludes that the balance of equities tips somewhat in plaintiff's favor, but not decisively because the false representations made by defendant, if any, do not appear to the Court to be egregious.

Finally, Spruce avers that its requested relief comports with the public interest in ensuring that businesses do not engage in false and misleading advertising. Festa responds that the imposition of an injunction would be contrary to public interest because competition is encouraged in the marketplace. It contends that this lawsuit is yet another attempt by Spruce to pressure defendant into selling its business to plaintiff or to intimidate Festa into agreeing to engage in a scheme to raise prices of radon mitigation fans in the marketplace.

Plaintiff's motive for initiating this lawsuit may become relevant later but consideration of motive is beyond the scope of the pending motion and the Court agrees with plaintiff that it is in the public interest to remove false advertising from the marketplace.

**C.    Security under Fed. R. Civ. P. 65(c)**

A movant for injunctive relief must give security in an amount that the Court considers proper to pay costs and damages sustained by any party found to have been improvidently enjoined. Fed. R. Civ. P. 65(c).  The Court will therefore require the posting of a security bond in the amount of $25,000 to cover defendant's potential cost of correcting its website and distributing revised advertising brochures.

<u>**ORDER**</u>

For the foregoing reasons, plaintiff's motion for preliminary injunction (Docket No. 4) is **ALLOWED, in part, and DENIED, in part**, and plaintiff is entitled to injunctive relief as more fully described in the preliminary injunction attached hereto.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated July 2, 2015