**United States District Court**
**District of Massachusetts**

```
_____
                                )
SPRUCE ENVIRONMENTAL            )
TECHNOLOGIES, INC.,             )
                                )
          Plaintiff,            )
                                )   Civil Action No.
     v.                         )   15-11521-NMG
                                )
FESTA RADON TECHNOLOGIES, CO.,  )
                                )
          Defendant.            )
_____)
```

<u>MEMORANDUM & ORDER</u>

**GORTON, J.**

This case involves two direct competitors in the radon mitigation industry, a market that provides products for testing and reducing levels of the radioactive gas radon. Each party alleges that the other engaged in false advertising.

Pending before the Court is defendant's motion for a preliminary injunction. For the foregoing reasons, that motion will be allowed, in part, and denied, in part.

**I.   <u>Background</u>**

Plaintiff Spruce Environmental Technologies, Inc. ("plaintiff" or "Spruce") is a Massachusetts corporation that manufactures and sells radon mitigation devices including a line of radon mitigation fans under the trade name RadonAway.

-1-

Defendant Festa Radon Technologies, Co. ("defendant" or "Festa") is a Pennsylvania corporation that also manufactures and supplies radon mitigation devices.  It entered the radon mitigation fan market in 1999 when that portion of the industry was dominated by plaintiff and one other company.  Festa markets and sells a line of radon mitigation fans under the name AMG.

Plaintiff initiated this action in April, 2015 by filing a complaint alleging that defendant's advertisements contained false and misleading statements in violation of the federal Lanham Act and various Massachusetts laws.

Plaintiff also filed a motion for a preliminary injunction requiring defendant to "cease its false and disparaging advertising . . . [and] publish corrective advertising".  That motion was allowed, in part, and denied, in part in July, 2015. Accordingly, the Court directed defendant to revise its advertisements and to cease making representations with respect to the certification of its radon fans.

In November, 2015, defendant filed a second amended answer with a counterclaim asserting that plaintiff's advertisements contained false and misleading statements in violation of the federal Lanham Act and various Massachusetts laws.  The three counts raised in defendant's counterclaim closely mirror three of the four counts raised in plaintiff's complaint.

-2-

In late February, 2016, defendant filed the pending motion for a preliminary injunction.

## II.   **Motion for a preliminary injunction**

### A.   **Legal standard**

In order to obtain a preliminary injunction, the moving party must establish 1) a reasonable likelihood of success on the merits, 2) the potential for irreparable harm if the injunction is withheld, 3) a favorable balance of hardships and 4) a favorable effect on the public interest. Jean v. Mass. State Police, 492 F.3d 24, 26-27 (1st Cir. 2007).  Out of those factors, the likelihood of success on the merits "normally weighs heaviest on the decisional scales." Coquico, Inc. v. Rodriguez-Miranda, 562 F.3d 62, 66 (1st Cir. 2009).

The Court may accept as true "well-pleaded allegations [in the counterclaim] and uncontroverted affidavits." Rohm & Haas Elec. Materials, LLC v. Elec. Circuits, 759 F. Supp. 2d 110, 114, n.2 (D. Mass. 2010) (quoting Elrod v. Burns, 427 U.S. 347, 350, n.1 (1976).  The Court may rely on otherwise inadmissible evidence, such as hearsay, so long as it finds that, after

> weighing all the attendant factors, including the need
> for expedition, this type of evidence was appropriate
> given the character and objectives of the injunctive
> proceeding.

Asseo v. Pan Am. Grain Co., Inc., 805 F.2d 23, 26 (1st Cir. 1986).  Ultimately, the issuance of preliminary injunctive

relief is "an extraordinary and drastic remedy that is never awarded as of right." Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 8-9 (1st Cir. 2012) (quoting Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011)).

**B.   Application**

Defendant seeks a preliminary injunction to enjoin plaintiff from advertising that 1) all RadonAway fans are certified for outdoor use under the safety standards set forth in "UL 507 – Standard for Electric Fans" ("UL 507") and 2) the RP260 and RP380 models of RadonAway fans are "Energy Star Rated".

**1.   Likelihood of success**

To prevail on its claim of false advertising under the Lanham Act, defendant must prove that

> (1) the [plaintiff] made a false or misleading description of fact or representation of fact in a commercial advertisement about [its] own or another's product;
>
> (2) the misrepresentation is material, in that it is likely to influence the purchasing decision;
>
> (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience;
>
> (4) the [plaintiff] placed the false or misleading statement in interstate commerce; and
>
> (5) the [defendant] has been or is likely to be injured as a result of the misrepresentation, either by direct

diversion of sales or by a lessening of goodwill
associated with its products.

See Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284
F.3d 302, 310-11 (1st Cir. 2002).  If defendant alleges that the
advertisement is literally false, then it need not present
evidence of consumer deception. Id. at 311.

### a.  Statements on outdoor use

Defendant contends that plaintiff's advertisements contain
false statements that plaintiff's RadonAway fans are certified
for outdoor use.  It proclaims that those statements are
literally false because the fans have not been tested or
certified by Intertek Testing Services NA, Inc. ("Intertek"), an
independent laboratory which tests and certifies products for
compliance with safety and performance standards, under the UL
507 standards for outdoor use.  Defendant seeks to enjoin
plaintiff's continued use of those statements in its
advertising.

Defendant offers a number of affidavits in support.  The
first is an affidavit, dated February 23, 2016, by Daryl Festa
("Daryl Festa"), its vice president and general manager,
declaring that 1) the advertised RadonAway fans do not bear
stickers specifically marking them for outdoor use, 2) Intertek
did not issue an "Authorization to Mark" the fans for outdoor
use, 3) Intertek omits RadonAway fans from its list of products

-5-

that qualify for outdoor use under the UL 507 standards, 4) his own efforts to disassemble and inspect the fans reveal that they do not in fact satisfy the UL 507 standards and 5) industry publications report that RadonAway fans increase the risks of shorting, overheating, electrical shock and house fires.

Plaintiff challenges Daryl Festa's declarations as 1) based upon mere speculation, 2) ignoring reports stating that the fans were tested and certified for outdoor use and 3) constituting lay witness testimony on a matter on which he lacks personal knowledge.  It asks the Court to strike or disregard the affidavit and submits that those defects are not excused by a need for expedition,

> particularly where this case has been pending for almost a year, and Festa apparently has engaged no qualified experts to engage in any actual testing to determine whether Spruce's RadonAway fans comply with UL 507 standards for outdoor use.

Defendant counters with a supplemental affidavit from Daryl Festa, dated March 16, 2016, explaining that his declarations are based upon years of personal knowledge and experience in designing and testing radon fans under the UL 507 standards.  He also states that there is no evidence that RadonAway fans passed the Water Spray or UV light tests or were marked for outdoor or rooftop use, and that the fans thus did not comply with the UL 507 standards.

Defendant next presents an affidavit from Adam Black
("Black"), a Senior Safety Engineer at F2 Labs, an independent
laboratory that it retained to test two RadonAway fans from the
XP201C and GP501 model series for compliance with the UL 507
standards.  Black declares that neither fan satisfied the
outdoor requirements because neither fan passed the Water Spray
Test or bore the proper label.

Defendant proclaims that plaintiff's customers,
professional contractors who install radon mitigation systems on
residential property, would not buy or use RadonAway fans for
exterior systems if they knew that the fans were not certified
for outdoor use.  Defendant argues that it will likely lose
customers and goodwill as a result of the false statements.

Plaintiff responds that the challenged statements are true
and not literally false because its RadonAway fans have indeed
been tested and certified under the UL 507 standards for outdoor
use.  It presents an affidavit by Peter Sedor ("Sedor"), a
Safety Engineering Team Leader at Intertek, who claims that
Intertek tested and certified all of its RadonAway fans for
outdoor use pursuant to the UL 507 requirements.

Plaintiff also submits an affidavit by David Kapturowski
("Kapturowski"), its vice president and co-founder, declaring
that Intertek 1) tested and certified several of its products
for outdoor use and 2) authorized plaintiff to state in its

-7-

packaging insert label that the products were certified for outdoor use.

In response, defendant refers the Court back to Daryl Festa's supplemental affidavit which notes that Kapturowski previously admitted that he was not involved in product testing and had not inquired as to whether RadonAway fans had been tested for outdoor use.  The supplemental affidavit also faults the Kapturowski and Sedor affidavits for not explaining how RadonAway fans could comply with the UL 507 standards when they have not been marked for outdoor use.

At the motion hearing, plaintiff provided the Court with a letter, dated March 21, 2016, sent by Sedor and another Intertek employee to Kapturowski that authorized plaintiff to label RadonAway fans for outdoor use pursuant to the UL 507 standards.

After weighing and reviewing the affidavits and evidence, including Daryl Festa's affidavit from February 23, 2016, the Court finds that defendant is unlikely to show that the advertising statements that plaintiff made concerning outdoor use were literally false.  Defendant is unlikely to prevail on its claim of false advertising with respect to outdoor use and is therefore not entitled to injunctive relief on that claim. See Tuxworth v. Froehlke, 449 F.2d 763, 764 (1st Cir. 1971)("No preliminary injunction should be granted in any case unless there appears to be a reasonable possibility of success on the

merits."); Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir.
1993)("In the ordinary course, plaintiffs who are unable to
convince the trial court that they will probably succeed on the
merits will not obtain interim injunctive relief.").

Accordingly, defendant's motion for injunctive relief will
be denied with respect to the statements concerning outdoor use.

### b.    Statements on Energy Star Ratings

Defendant asserts that plaintiff's advertising references
to the RP260 and RP380 models of RadonAway fans as Energy Star
Rated are literally false.  Defendant submits that those
statements influence the purchasing decisions of customers and
will likely cause a direct diversion of defendant's sales to
plaintiff.  It seeks to enjoin plaintiff's use of those false
statements in its advertisements.

Plaintiff concedes that its RP260 and RP380 models do not
comply with the most recent set of Energy Star standards but
nevertheless contends that defendant is unlikely to prevail on
its claim because plaintiff 1) did not intentionally make those
false statements and 2) does not intend to advertise those fans
as Energy Star Rated in the future.  Plaintiff stresses that it
has acted in good faith throughout the course of this action by
removing inaccurate references to Energy Star Ratings
immediately upon discovering them.

The issue of the non-moving party's good faith in curing the violation is more relevant to the discussion of irreparable harm than to the moving party's likelihood of success on the merits. Camel Hair & Cashmere Inst. of Am., Inc. v. Assoc. Dry Goods Corp., 799 F.2d 6, 13 (1st Cir. 1986)("Although a showing of intent or lack of good faith on the part of the defendant is not necessary to make out a claim under the Lanham Act, . . . we agree with the district court that Federated's good faith . . . is a significant factor to take into account in determining the likelihood that Federated will cause injury to the plaintiff's members in the future.").

Accordingly, the Court finds that the parties do not dispute that plaintiff made literally false statements in its advertisements that the RP260 and RP280 models of RadonAway fans were Energy Star Rated.  Defendant has shown a likelihood of success on its claim of false advertising with respect to the statements on Energy Star Ratings.

### 2.    Remaining factors

The Court will thus consider the remaining factors for injunctive relief with respect to the statements concerning Energy Star Ratings.

Defendant contends that it faces irreparable harm because it will likely lose customers and goodwill if plaintiff continues to advertise falsely that its identified RadonAway

fans are Energy Star Rated.  Defendant disputes plaintiff's good
faith in promptly removing such false statements based upon
evidence suggesting that plaintiff 1) knew in June, 2015 that
its advertisements contained false statements on Energy Star
Ratings but 2) waited at least eight months before removing all
of those statements.  Defendant views the delay as a reflection
of plaintiff's inability to "police its advertising and that of
its agents and distributors" and concludes that plaintiff's
actions are likely to cause it injury in the future.

Defendant argues that the balance of hardships favors
injunctive relief because 1) any harm to plaintiff would be
"entirely self-inflicted," 2) a prohibition on false statements
would not otherwise prejudice plaintiff's advertisement
interests and 3) the injunction would not burden plaintiff with
any additional hardship in that it has already removed the
offending statements and is contractually obligated as an Energy
Star Partner to ensure that its distributors do not falsely
advertise its products.

Plaintiff responds that 1) defendant cannot rely only on
"bald assertions in a legal brief of lost sales or goodwill" to
assert irreparable harm, 2) defendant has reported a "consistent
growth rate of an increased percentage" every year despite the
alleged presence of false statements in plaintiff's
advertisements and 3) any harm to defendant would be an

incidental result of competition in the radon fan market. Plaintiff surmises that an injunction would cripple its business, potentially cause many employees to lose their jobs and injure the public interest in market competition.

Although defendant can be compensated by money damages for lost sales if it prevails on the merits of its claims, the Court concludes that it has sufficiently demonstrated irreparable harm to its goodwill.  The fact that defendant may enjoy increasing success in the marketplace is irrelevant to the issue of whether it will face irreparable harm and relatively more hardship in the absence of injunctive relief.  The requested injunction would merely prevent plaintiff from making false statements with respect to Energy Star Ratings in the future, a hardship that is outweighed by defendant's potential loss of customers and goodwill if plaintiff continues to falsely advertise.

On balance, the factors for injunctive relief tip in defendant's favor only with respect to the statements concerning Energy Star Ratings.  Accordingly, defendant's motion for a preliminary injunction will be allowed, in part, and denied, in part.

## ORDER

For the foregoing reasons, defendant's motion for a preliminary injunction (Docket No. 66) is **ALLOWED, IN PART, AND**

**DENIED, IN PART,** as more fully described in the preliminary

injunction attached hereto.


**So ordered.**

                                    /s/ Nathaniel M. Gorton
                                    Nathaniel M. Gorton
                                    United States District Judge

Dated April 21, 2016